UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

NORMAN SANDERS (#197433)   CIVIL ACTION

VERSUS

N. BURL CAIN, ET AL.   NO. 11-0227-JJB-RLB

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 10, 2015.

RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**NORMAN SANDERS (#197433)**                      **CIVIL ACTION**

**VERSUS**

**N. BURL CAIN, ET AL.**                               **NO. 11-0227-JJB-RLB**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendants' Motion for Summary Judgment (R. Doc. 126). This motion is opposed.

The *pro se* plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, brought this action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, *et seq.*, asserting claims against numerous prison officials and complaining that he was retaliated against for filing an administrative grievance in April, 2010, and that he was subjected to religious discrimination in violation of his constitutional rights. Pursuant to a prior Ruling in this case (R. Doc. 95), the Court has declined the exercise of supplemental jurisdiction over the plaintiff's state law claims and has dismissed all of the plaintiff's remaining claims and defendants except his claims asserted against defendants Burl Cain, Cathy Fontenot and Tim Delaney for nominal and punitive damages in the defendants' individual capacities under § 1983 and for declaratory and injunctive relief in the defendants' official capacities under both § 1983 and RLUIPA arising out of the defendants' refusal, prior to April, 2010, to allow the plaintiff to conduct religious services on Sundays at the main prison complex at LSP.

The remaining defendants now move for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, certified copies of the plaintiff's pertinent administrative remedy proceedings, a copy of the Complaint and Docket Sheet in another case filed by the plaintiff before this Court, *Norman Sanders v. State of Louisiana, et al.*, Civil Action No. 06-CV-0536-RET-DLD, certified copies of correspondence between the plaintiff and prison officials regarding Mormon religious programming, certified copies of excerpts from the plaintiff's deposition transcript, certified copies of the Monthly Chaplain's Department Schedules for the dates April to June, 2010, certified copies of excerpts from the prison records of the plaintiff and co-inmates who have signified their faith as being Mormon or who attended Mormon call-outs in 2010, a certified copy of LSP Directive No. 23.002 (re: "Faith-Based Programs and Services"), a copy of Department Regulation no. B-08-005 (re: "Classification, Sentencing and Service Functions ... Faith-Based Programs and Services"), certified copies of the Chaplains' Department Annual Reports for 2009-10 and 2012-13, and the affidavits of Trish Foster, Kevin Benjamin and defendants Burl Cain, Tim Delaney and Cathy Fontenot.

The plaintiff opposes the defendants' motion for summary judgment, relying upon a Statement of Disputed Facts, several Declarations executed by him "under penalty of perjury," copies of excerpts from the plaintiff's administrative remedy proceedings, copies of correspondence authored by the plaintiff in 2006 and 2007, respectively, requesting authorization to conduct Mormon services at LSP, a copy of a memorandum dated April 26, 2007, authorizing Mormon service/study at LSP, copies of statements dated 2004-06 by the plaintiff and seven (7) co-inmates at LSP, signifying that they purport to be followers of the Mormon faith, copies of the Monthly Chaplains' Department Schedules for April - June, 2010, copies of responses to written discovery by the defendants, copies of memoranda dated April 21

and June 18, 2010, authorizing the plaintiff to conduct Mormon services and study sessions at Camp C at LSP, a copy of a written request by the plaintiff dated April 26, 2010, to travel from Camp C to the main prison for Mormon services and study sessions, a copy of an "affidavit" prepared by co-inmate David Durbin dated May 1, 2010, a copy of correspondence authored by the plaintiff on August 17, 2010, complaining, *inter alia,* regarding travel from Camp C to the main prison for religious gatherings, copies of various attendance authorizations for religious groups in 2010, the affidavit of Assistant Warden Tim Delaney, copies of Declarations prepared by co-inmates Toby Parfait (dated June 8, 2014), Nelson Tippen (dated December 14, 2011, and May 17, 2012), Paul Gray (dated April 24, 2012), Travis Carter (dated April 25, 2012), and Ronald Washington (dated June 3, 2012), a copy of Department Regulation B-08-005 (re: "Classification, Sentencing and Service Functions ... Faith-Based Programs and Services"), and excerpts from the plaintiff's medical and disciplinary records.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248. This

burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Complaint, as amended, the plaintiff alleges that he is a practicing Mormon and that in 2007 he graduated from the Bible College at LSP, operated by the New Orleans Baptist Theological Seminary ("NOBTS"). At that time, he requested and was given permission to start a Mormon ministry and conduct Mormon services at the prison, and he became the self-proclaimed leader of the Mormon community. Between 2007 and 2010, he conducted religious services on the first and third Mondays of every month at the LSP main prison Interfaith Chapel and met for three hours every Saturday for study and prayer in the main prison Education Building. On April 6, 2010, he and several other Mormon inmates filed administrative grievances complaining that they were being discriminated against based upon their religion, specifically because (1) the Mormon community was not provided with an opportunity to conduct worship services on Sundays, *i.e.,* their "holy days," at the main prison interfaith chapel,

(2) the Mormon community was not being provided with office space or allowed to form a club for the purpose of holding fund-raisers to purchase religious books and materials, and (3) information was being disseminated by NOBTS personnel that the Mormon religion was a "cult." In response to this grievance, the plaintiff was called to a meeting with Chaplain Brad Delaughter at LSP on April 13, 2010, who listened to the plaintiff's complaints and informed the plaintiff that a Sunday time period could likely be provided for services at the main prison, but advised the plaintiff that the remaining complaints would need to be addressed by administration officials. Three days later, on April 16, 2010, the plaintiff was transferred without prior notice to Camp C at LSP, an out-camp separated from the main prison complex. Shortly thereafter, on April 19, 2010, the plaintiff was called to the Assistant Warden's Office at Camp C and was informed by Assistant Warden Tim Delaney that the plaintiff was being assigned as a Mormon inmate minister at Camp C and would be allowed to conduct religious services on Sundays at the chapel. The plaintiff asserts, however, that there were no other Mormon inmates housed at Camp C with whom he could congregate and worship. Accordingly, on April 27, 2010, the plaintiff filed a second administrative grievance, complaining that his transfer to Camp C had been retaliatory in nature and that it was hindering the practice of his religion. Specifically, the plaintiff complained that there were no other Mormons at Camp C with whom he could worship and congregate and that he was still being prevented from holding a fund-raiser for the purpose of raising money to purchase religious books and materials. Finally, on May 28, 2010, the plaintiff was called to a meeting with defendant Warden Burl Cain and was informed at that time that the reason for the plaintiff's transfer had in fact been to facilitate the practice of the plaintiff's Mormon faith by providing greater access to the under-utilized chapel at Camp C and by providing access to a well-funded "concept club" at Camp C that could purchase books and

religious materials.

In addition to the foregoing, the plaintiff complained that on numerous occasions after his transfer to Camp C, he requested permission from defendant Delaney to be allowed to travel on call-outs from the out-camp to the main prison complex for services and for weekly Mormon gatherings, but defendant Delaney refused these requests and/or failed to respond thereto. The plaintiff asserted that this refusal was discriminatory because LSP allegedly allowed inmates of other religious denominations to attend services and functions at the main prison complex.

In a Ruling on the defendants' initial motion for summary judgment (R. Doc. 95), the Court concluded that the plaintiff's claims relative to his transfer to Camp C and to events occurring at Camp C were subject to dismissal. Specifically, the Court found that the plaintiff had failed to show that the decision to transfer him from the main prison to Camp C had been undertaken in retaliation for the plaintiff's exercise of either his First Amendment right to seek redress of grievances or his First Amendment right to freely practice his religious. In addition, the Court found that the plaintiff's claim that his transfer to Camp C, as such, interfered with the practice of his religion – through, *inter alia,* a separation from his congregation that prevented him from worshiping with other Mormons – did not amount to a violation of either the First Amendment or RLUIPA. Finally, the Court found that the plaintiff had failed to exhaust administrative remedies, as mandated by 42 U.S.C. § 1997e, relative to his other claims regarding events occurring at Camp C, including that his right to equal protection was violated after his transfer because prison officials refused to allow him to travel to the main prison for weekly Mormon call-outs (as the adherents of other faith-based groups were allegedly allowed to do). In short, all of the plaintiff's claims relative to his transfer to and his confinement at Camp C have been dismissed from this proceeding by the Court's prior Ruling. This leaves only the

plaintiff's claim regarding events occurring at the main prison complex prior to April, 2010, and as to this claim, the Court found in its prior Ruling that only the plaintiff's claim regarding the defendants' failure to provide an opportunity for Sunday worship merited further consideration by the Court.

Addressing first defendant Tim Delaney, the Court concludes that this defendant is entitled to summary judgment herein. Specifically, during the relevant time period, defendant Tim Delaney was the Assistant Warden in charge of Camp C at LSP, the out-camp to which the plaintiff was transferred in April, 2010. Accordingly, this defendant was only involved in events occurring at that out-camp. Thus, considering that all of the plaintiff's claims relative to events occurring at Camp C have been dismissed by the Court's previous Ruling in this case, there is no basis for a finding of liability in connection with defendant Tim Delaney. This defendant, therefore, is entitled to summary judgment.

Turning to the plaintiff's claim asserted against the remaining defendants, the sole claim before the Court is whether the defendants violated his constitutional and statutory rights by failing to provide an opportunity for Sunday worship prior to April, 2010, and whether the plaintiff is entitled to damages (nominal and/or punitive) or injunctive relief in connection with that deprivation. In responding to the plaintiff's contentions, the defendants assert that they are entitled to qualified immunity in connection with this claim.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201.

Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.* at 202. The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.[1]

Undertaking the qualified immunity analysis with respect to the plaintiff's remaining claim, the Court finds that the defendants' motion should be granted. Specifically, the Court finds that the plaintiff has not met his burden in opposing the defendants' motion and has not shown that the defendants have participated in any violation of the plaintiff's constitutional rights. Specifically, in order for a prison official to be found liable under § 1983, the official must have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756,

---

1. The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Although the *Saucier* methodology will be "often beneficial", the Court in *Pearson* leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis. *Id.*

768 (5th Cir. 1983). Any allegation that the defendant warden and assistant warden are responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983. *See Ashcroft v. Iqbal*, *supra*, 556 U.S. at 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability"). Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must allege that the deprivation of his constitutional rights has occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law. *Lozano v. Smith*, *supra*, 718 F.2d at 768.

Applying the foregoing standard, and upon a review of the parties' pleadings and other available documentation, it appears that the plaintiff has failed to sufficiently show that either Warden Cain or Assistant Warden Fontenot has undertaken any action which may be characterized as a violation of the plaintiff's constitutional rights. The undisputed facts reflect that the plaintiff has been an adherent of the Mormon faith for most of his life. While in prison, he pursued religious training through a program offered at LSP by NOBTS and, upon graduation from that program in 2007, he requested and was granted permission to start a Mormon ministry at the prison. It appears from a memo dated April 26, 2007, that this ministry was initially authorized to meet for two hours on the first Monday of every month for services and study, *see* R. Doc. 126-8 at p. 2, but the parties concede that by April of 2010, the ministry was allowed to meet for two hours in the LSP Interfaith Chapel on the first and third Mondays of every month

(for services) and for three hours every Saturday in a room in the LSP Education Building (for study and prayer). In the plaintiff's deposition, he conceded that, whereas his initial request to start a Mormon ministry in 2007 had included a request for the right to conduct religious services on Sundays, he had not made any further formal written requests for that privilege prior to April, 2010. *See* R. Doc. 126-9 at p. 25. Instead, he asserted in his deposition that he "just bided [his] time" and waited a while, trusting that prison officials would eventually accede to his initial request. *Id.* at pp. 13 and 25. It was only when this did not occur that he and several other self-identified Mormon inmates filed administrative grievances in April, 2010, seeking, *inter alia,* to be allowed access to the main prison Interfaith Chapel to conduct services on Sundays.

It appears from the available evidence that prison officials responded very quickly to the plaintiff's April, 2010, grievance. Specifically, he was called to the Chaplains' Office on April 13, 2010, and spoke with LSP Chaplain Brad Delaughter, who inquired "what it would take to resolve the problem." The plaintiff allegedly responded that he wanted (1) a time slot in the Interfaith Chapel for Sunday worship, (2) "club status" for the Mormon ministry so that fund-raisers could be held to generate money, and (3) for NOBTS to stop spreading information within the prison that characterized the Mormon faith as a "cult" and thereby created a hostile environment. According to the plaintiff, Chaplain Delaughter responded that whereas a Sunday worship period could likely be provided, the remaining items were "out of his hands and up to administration officials." Three days after this meeting, on April 16, 2010, the plaintiff was transferred to Camp C. The parties concede that, upon such transfer, the plaintiff was designated to be a Mormon inmate minister at the out-camp and was provided with a regular Sunday time slot for worship services at that location. In addition, the parties concede that defendant Burl Cain called together a meeting consisting of the plaintiff and other self-declared Mormon

inmates on May 19, 2010, and informed them that the purpose of the transfer had been to facilitate the practice of the Mormon faith by providing weekly access to a Sunday time slot at the under-utilized Camp C chapel and also access to a well-funded "concept club" for the purpose of purchasing religious materials. Warden Cain also offered to transfer any other Mormon inmates to Camp C if they wished to go, without penalty or any loss of privileges. As noted above, the Court has previously ruled that the transfer itself has not been shown to have been motivated by retaliatory or discriminatory animus and has not been shown to have hindered the practice of the plaintiff's religious beliefs.

Based on the foregoing, and accepting the foregoing recitation of facts as true, the Court finds that the defendants are entitled to qualified immunity in connection with the plaintiff's claim for nominal and/or punitive damages.[2] Specifically, the plaintiff has effectively conceded that prior to April, 2010, he did not submit any formal grievance complaining of the failure of prison officials to provide him with an opportunity for Sunday worship. Thus, there is nothing to suggest that prior to April, 2010, either defendant had direct and personal knowledge of the plaintiff's complaint in this regard. Whereas the plaintiff asserts that he made an initial request in 2006 and/or 2007 for the desired accommodation, and informal requests thereafter, he has not produced any evidence reflecting such later requests, and he does not allege that such requests were made directly to either defendant Cain or Fontenot. Further, whereas the affidavit of defendant Fontenot reflects that she had responsibility for managing and coordinating faith-based programs at the prison, her duties were in fact far greater in scope, including the management and coordination of all classification, education, faith-based and pre-release

---

2. Qualified immunity is not available in connection with claims for declaratory and injunctive relief. *Mayfield v. Texas Dept. of Criminal Justice*, 529 F.3d 599, 606 (5th Cir. 2008).

programs at the prison, together with the duty to direct, develop and monitor the operating budget of the Programming Department. Moreover, her affidavit attests that she had no involvement in creating the monthly schedules of the Chaplains' Department, which schedules set forth the days of the week and the times that religious services were held at the main prison complex, schedules admittedly involving thousands of inmates and numerous faith-based programs, most of which involved more adherents than did the Mormon faith. *See* R. Doc. 127-6. Thus, there is nothing in the record to suggest that, prior to April, 2010, either defendant was personally aware or personally involved in denying the plaintiff an opportunity to engage in Sunday worship at LSP. On this showing, these defendants are entitled to qualified immunity in connection with this remaining claim.

In addition to the foregoing, the record reflects that when defendants Fontenot and Cain did become personally aware of the plaintiff's complaint regarding Sunday worship, through the submission of his formal grievance in April, 2010, the defendants took action that the Court has determined, in its prior Ruling, to be reasonable under the circumstances. Specifically, defendant Cathy Fontenot instigated a meeting between the plaintiff and Chaplain Delaughter to determine whether the plaintiff's grievance could be amicably resolved. When that meeting apparently resulted in an impasse – because the plaintiff would not accept a proffered Sunday time slot as a resolution to the grievance – a determination was made by prison officials to transfer the plaintiff to Camp C where, in the opinion of prison administrators, his request for Sunday worship could be better accommodated, as could his request for the purchase of religious materials. In addition, prison administrators offered other Mormon inmates an opportunity to transfer to Camp C for the purpose of congregation together at that location. All of this was explained to the plaintiff and to other inmates at a meeting conducted by defendant Cain on May

28, 2010. Whereas the plaintiff may not have been happy with the resolution of his complaint regarding Sunday worship, the Court has concluded that he has failed to state a claim of constitutional dimension relative to his transfer to Camp C. The finding that the defendants acted reasonably once they became involved in addressing the plaintiff's concerns underscores the finding now made that the defendants are entitled to qualified immunity in connection with the plaintiff's claim for monetary damages.

Turning to a consideration of the plaintiff's claim for prospective injunctive relief, RLUIPA provides that government officials may not impose a substantial burden on the religious exercise of a person confined to an institution unless that burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000cc-1(a). Under RLUIPA, the plaintiff bears the initial burden of proving that a challenged government action "substantially burdens" his "religious exercise," *Mayfield v. Texas Dept. of Criminal Justice*, 529 F.3d 599, 613 (5th Cir. 2008). If the plaintiff meets that burden, the burden shifts to the government to "demonstrate that its action was supported by a compelling interest and that the regulation is the least restrictive means of carrying out that interest." *Id.* "RLUIPA imposes a higher burden than does the First Amendment in that the statute requires prison regulators to put forth a stronger justification for regulations that impinge on the religious practices of prison inmates." *Id.* at 612. A government action imposes a substantial burden on religious exercise if it "truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Id.* at 613, *quoting Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004). Whether the government action or regulation imposes a substantial burden on an adherent's exercise requires a case-by-case, fact-specific inquiry. *Id.* Although RLUIPA imposes strict scrutiny upon the

imposition of certain religious limitations upon prisoners, the drafters of the statute were mindful that discipline, order and security are urgent in penal institutions, and they therefore anticipated that courts would apply the RLUIPA test "with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *See Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005).

In initially addressing this claim, the Court concluded that the plaintiff's attendance at religious services on Mormon "holy days" constituted a "religious exercise" subject to analysis under the statute. *See* R. Doc. 95. Specifically, RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7). The Court also found that the failure of prison officials to provide any opportunity to the plaintiff to conduct Sunday services at the main prison complex had potentially resulted in a "substantial burden" on such exercise. Further, the Court concluded that the defendants had not met their burden of showing that the imposition of this deprivation met a compelling governmental interest or was the least restrictive available means to accomplish such interest. Specifically, it appeared that there were several locations at the main prison where such services could have been held, and although the defendants had asserted that the relative size of other faith-based groups had justified the preferential access of such groups, the defendants had not provided sufficient information regarding, *inter alia,* the sizes of those other groups. Thus, the Court concluded that there existed potential factual questions that remained relative to this issue.

Notwithstanding the foregoing, it is now clear that, with one brief exception in 2012, the plaintiff has not been housed at the main prison since April, 2010, and so has not been subjected

to the deprivations addressed by the Court that allegedly occurred at that location.  Accordingly, his claim for prospective injunctive relief relative to Mormon Sunday worship at the LSP main prison has effectively been rendered moot by his transfer from the main prison and is no longer properly before the Court.  *See, e.g., Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (recognizing that an inmate's transfer from an offending institution or location normally "render[s] ... claims for declaratory and injunctive relief moot").  The United States Court of Appeals for the Fifth Circuit has clearly and repeatedly held that a transfer generally renders moot any claims for injunctive relief with respect to an inmate's prior facility.  *See, e.g., Kidd v. Livingston*, 463 Fed. Appx. 311, 314 (5th Cir.), *cert. denied*, ___ U.S. ___, 133 S.Ct. 36 (2012); *Stern v. Hinds County, Mississippi*, 436 Fed. Appx. 381, 382 (5th Cir. 2011); *Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995); *Davis v. Wall*, 1995 WL 136204, *2 n. 3 (5th Cir. Mar. 9, 1995).  As a general matter, "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Powell v. McCormack*, 395 U.S. 486, 496 (1969); *Rocky v. King*, 900 F.2d 864, 867 (5th Cir. 1990).  Stated differently, a case is moot when the Court can no longer grant any effectual relief to the prevailing party.  *See Motient Corp. v. Dondero*, 529 F.3d 532, 537 (5th Cir. 2008).

Notwithstanding the foregoing, an exception to the mootness doctrine exists when a dispute is "capable of repetition, yet evading review."  *Davis v. Federal Election Commission*, 554 U.S. 724, 735 (2008).  This "exception applies where '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'"  *Id.*  When the exception is alleged, a plaintiff must be able to allege more than mere speculation as to the likelihood of repetition.  *Rocky v. King, supra*, 900 F.2d at 871.

In initially addressing the plaintiff's claim for prospective injunctive relief, the Court concluded, without discussion, that the claim had not been rendered moot by the plaintiff's transfer from the main prison complex, specifically because, "[i]n the event that the plaintiff is transferred back to the main prison complex, he will presumably be subjected to the same prison policies." *See* R. Doc. 95 at p. 17, note 8. At the present juncture, however, the Court finds it appropriate to re-visit this conclusion and finds that the capable-of-repetition-yet-evading-review exception should not be applied to the plaintiff's claim for injunctive relief. In the first place, considering the length of time that has elapsed since the plaintiff was classified to the main prison complex, it is entirely speculative whether the plaintiff will be returned to that location. *See Ramon v. Dretke*, 2012 WL 761678, *2 (E. D. Tex. March 8, 2012) (upholding a finding of mootness where an inmate was transferred from one unit to another, with little likelihood of return). Further, in the event that such a transfer were to occur, and in the event that prison officials were to refuse the plaintiff an opportunity for Sunday worship at that time, the nature of the continuing deprivation would not be so short in duration as to preclude a review of the plaintiff's claim. *See Haralson v. Campuzano*, 356 Fed. Appx. 692, 695-96 (5th Cir. 2009) (finding that the inmate plaintiff's transfer from the hospital wing of a prison rendered his claims for injunctive relief moot, and his claim of a likely return to that location was speculative and likely capable of review at that time); *Rocky v. King, supra*, 900 F.2d at 871.[3] Accordingly, the plaintiff's claim for injunctive relief in this case should be denied, and this action should be

---

3. The plaintiff has in fact submitted subsequent grievances to prison officials at LSP relative to the exercise of his First Amendment religious rights and has filed subsequent lawsuits before this Court relative to these claims. *See, e.g., Norman Sanders v. N. Burl Cain, et al.*, Civil Action No. 14-0216-BAJ-RLB.

dismissed.[4]

## RECOMMENDATION

It is recommended that the defendants' Motion for Summary Judgment (R. Doc. 126) be granted, dismissing the plaintiff's remaining claims asserted against the defendants, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on February 10, 2015.

_____
**RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE**

---

4. Based on the Court's resolution of the plaintiff's claims, the Court need not address the defendants' alternative argument that the plaintiff's claims are time-barred.